Chief Judge, and may it please the Court, Bill Helfand for the appellants. Considering as this Court has observed the many times of late the Supreme Court has issued writs of certiorari to address the important doctrine of qualified immunity and the clarity with which the Supreme Court has made the analysis, it would seem to not require repetition that a judicial opinion denying the presumption of qualified immunity would include a written order that analyzes both questions of qualified immunity and, in this case, the legal question of absolute immunity. Mr. Helfand, are you seeking a limited remand to get reasons from the District Court? No, I think that this Court, Your Honor, can resolve these questions de novo. But shouldn't the District Court have an opportunity to tell us what were the reasons if the minute order is unsatisfactory? The District Court most certainly should have in light of this Court's opinion in Bakke v. LeBlanc. But it should have the opportunity to be more fulsome if necessary. I wouldn't quarrel with the panel's decision to give the District Court that opportunity, but it is not required since this case can be reviewed by this Court and decided de novo on issues of law. But I certainly understand, and it wouldn't be the first time that I've stood before this Court that the panel has decided to return the case to the District Court for just that very consideration. To be sure, at the very least, that is mandated by Supreme Court and this Court's precedent. It cannot be the case, considering the fact that immunity is presumed and must be disproven, that the immunity can be denied based solely upon an order that says immunity is denied, go do discovery, which is, I'm paraphrasing the District Court, but essentially that's where we are. If you are correct, assuming arguendo, that there is an insufficient description, link of causation, and there are several other alleged deficiencies, but one is that someone actually told them to demote or fire, should they have an opportunity to replead? Because they didn't, this wasn't one where they had two or three pleadings and we went through that, was it? Again, the District Court certainly had the discretion and exercised that discretion in this case. Let me find the reference to the record, Judge, at Record 201-205, the District Court specifically told the appellees that they had failed to state a claim and to file an amended complaint in an effort to do so. That amended complaint removed a claim of breach of contract, which of course made sense because none of these individuals could have been a party to a contract between any appellee and their school board employer. And then the only thing it included was some probably reasonably characterized musings of a former superintendent regarding his own relationship with the school district, but no attribution to any of the individual appellants here. And then some emails between one of the appellees and another individual, which again, talk about their belief, but they're no greater than allegations. So in answer to your question, Your Honor, it seems like that ship has sailed and this whether to resolve these questions now before the court or to remand them to the District Court can certainly take into consideration that the appellees have had plenty of opportunity to set out those facts that they think demonstrate a claim and those facts which they think overcome the presumption of immunity, if it's qualified immunity, as well as law that demonstrates the lack of both absolute legislative immunity and clearly established law that would preclude, again, the presumption of immunity. My clients came to the District Court presumed to be immune, and there has been no determination that they are not, or if not, why not on any element. Could you address Maureen Lopez's claims against Defendant Ramirez specifically? Is that one different than the rest of them because of the email exchanged in Exhibit A and quoted in paragraphs 35 through 41 of the complaint? Is that one specific enough? Why isn't that one specific enough? They don't do any more than the bare allegations that are in the complaint because the emails are between Ms. Lopez and the former superintendent, a gentleman named Alfredo Garcia, and what the former superintendent does in those emails, obviously, I'm sure, I hope we could agree, that Ms. Lopez's assertions are no more than allegations just that they are in the complaint. And then Mr. Garcia's response speaks to his own resignation, his own voluntary resignation, not any action by any of the appellants, not even any threatened action by any appellants. On page 16 of the brief, I've pointed out that Mr. Garcia is responding to Ms. Lopez's inquiry and he says it was critical for career purposes not to be suspended. This would definitely hinder my, and I've italicized my, ability to apply elsewhere. So Mr. Garcia is explaining his decision to resign, and obviously he's completely entitled to resign for whatever reasons he thinks appropriate, but one, he speaks of his fear of suspension, which of course as a matter of law could only have come from a majority vote of the board itself, not any one of these appellants. And he does not identify any one of these appellants as threatening even his job, let alone any of the appellees. So I don't think that that provides any further factual basis for stating a claim as to any of these individuals. The, have I answered your question? I think so. I guess I have a general follow-up question. Has to do with, you know, how do you have raised plausible inferences until you get into the nitty-gritty of, you know, more than just raise the inferences by saying this happened and these people said it was because of this and they're in the know without discovery. This is a, you know, a chicken and an egg problem that sometimes we have in the post-Twombly law world. I certainly, I certainly agree with the Court in terms of the issue of causation, although this Court is not without ample guidance of its own precedent as to how difficult that may be and yet may lead to dismissal. So I understand it, and to answer your question, Your Honor, again, there's ample precedent in this Court and in the Supreme Court in which there have been negative comments, observations and suggestions of problems related to political support for an opponent, Font v. Brady, I'm sorry, Brady v. Fort Bend County, excuse me, which I'm still not really happy about the trial outcome, but it's a perfect example of a case in which there were a number of people, Sheriff Molina had made comments about the desire to eliminate people once he was elected. Now, in that case, as an example, he did not say because they don't support me, but he had been out during the campaign advocating for the removal of, in that case, nine deputies if he was elected. So it's doable, but I don't think the Court reaches that in this case because this Court's precedent and consistent with Supreme Court precedent demonstrates that there's really four things that are necessary here. One is actual protected speech or conduct. The mere statement, I supported a political opponent, is not protected speech or conduct without some explication of the actual support because my vote is a support for a political candidate, but because it's a secret vote, it doesn't garner any political speech protection. The protection comes from some type of public speech which could activate some response and in that regard, this Court's precedent makes clear, and Judge Higginbotham was on the panel in Brady v. Madison County School District in 2001, then, and once there's protected speech identified, and of course it has to be identified as to each individual appellee, they can't just generally say we all support it, then for me, as the Court may know, I'm a relatively simple man, so simply put, awareness, animus, action, all three of those have to be pledged, and Your Honor is asking about the action phase, Judge Elrod. So awareness, first of all, there's simply nothing in this complaint from which the Court could reasonably have gleaned. They allege that they publicly supported a slate of candidates, so that their support of the slate is different than the private vote. Public support, an allegation of public support is sufficient, but again, remember, the first point, it's sufficient if there is awareness. It's not enough to say I publicly supported candidate B. And they knew it. Ah, but herein lies the problem, Your Honor. It's at page 13 of the appellee's brief. They essentially admit a lack of awareness because they say, and I'm quoting, it can be inferred through the pleadings that each appellant was aware of each appellee's political activity. Now that is simply insufficient in light of Twombly and Iqbal to say I supported candidate B, therefore candidate A must have known. What is the status of the case now? Is everything held up for the appeal or is it moving merrily along? Well, consistent with what should be a stay on discovery pending the resolution of questions of immunity, the district judge has repeatedly— I mean, this is a very experienced district judge who seemed to think this was an appropriate summary judgment question and knew that, I'm sure, that counsel on both sides are very able summary judgment arguers and defenders and could get through these issues. I mean, that seems to be what's occurring. Sure. I totally understand. And as Your Honor may know, some of the district judges may have gotten the impression from decisions of this court that a 12B6 dismissal is disfavored when a Rule 56 motion for summary judgment could be presented on appeal. So I don't quarrel with the courts— Well, counsel, let me back up a little bit to your assertions that your clients come here presumed to have qualified immunity. In a sense, that's true. However, the qualified immunity doctrinally is immunity to be determined at the earliest time practicable. And what this district judge did was he looked at the 12B6 motion, he looked at the platings, and he said, well, I can't—it's not determinable here at this stage fully. And because the order conspicuously says, I invite, say, motion for summary judgment, and then you would have a—presumably a further factual development moving toward the goal of determining qualified immunity at the earliest time that it can be determined. And instead, what's happened here, we jumped the gun, we come down to the Court of Appeals, and the case is not determinable either. But the principle, as I understand qualified immunity, is that it engages at the earliest point it can be determined. And the district judge really tried to set you on the course of developing the record for that. So why shouldn't we let you do that? Well, I think— And instead of arguing about what this person said, that person said, you got a record. And then you get into the question of particular defendants that are definitely situated, and the events of the election, et cetera, et cetera. And that proposition certainly has its place in this Court's jurisprudence, and it's been endorsed by the Supreme Court. But this Court in Bakke v. LeBlanc explained what the trial court was required to do if that was the case. It is not to say, motion denied, file a summary judgment. In fact, in Bakke, the court had a written order from the district court and still found— this court found that the district judge in Bakke doubly erred, to quote the court, in one, failing to address the legal questions of immunity, which don't require factual explication, and two, to the extent that the trial court required factual development to narrowly tailor discovery to the specific factual questions. So I don't quarrel with your assertion, Judge Shigemotham. You're absolutely right. But if that is the answer, then the district judge is required to say, I need to know the resolution of this factual question and this factual question. But I would submit that we don't get there because this is a case of absolute immunity as to these legislative officers, and if it's not, there is no clearly established law that supports the denial of the presumption of immunity regardless of the facts. When you come back up here, will you address the legislative immunity question, please? Because it's not clear that they ever sat as a legislative body to take an action on this pleading, and so it could have been that they were exerting their influence in formal ways. It's unclear. I'm going to ask them about this, too. And so it's not clear that it was through a legislative action, and then if it's through personnel matters rather than as a board matter, I'm not sure there's case law that those are legislative acts for which your clients would have legislative immunity. So can you address that on rebuttal, please? Yes, of course, Your Honor. Thank you. What you do, I would ask you to be attentive to the fact that legislative determination of legislative immunity does not spin on the particular process necessarily that it went through. It's the character of the ruling itself. If you determine, for example, to abolish a position, and the person that owes this one thing, that may be what the characterization is legislative. And it's either legislative, so I just focus on that because I really don't think that it's determinable whether the board did it or whatever. But immunity is broader than that, yes. You previewed my answer to Judge O'Rourke, Your Honor. Thank you. Good morning, panel. Judge David Botham, Judge Owen, Judge Elrod. May it please the court, my name is Alfonso Kennard, and I am here representing the appellees for once. Not usual for me to be in this function speaking second, but I'm happy to do it. First off, it's very clear here that we know what happened. A new majority came in. There was an election, and a new majority won outright. And after that, there's timing here. Temporal proximity. Shortly thereafter, these individuals were, it was made known to them that they would either be demoted, terminated, or made to live in unemployment hell. And we know that that happened. Now, it appears to me... Well, that seems endemic to the Valley in some ways. You know, these types of things, they do happen, and they really tend to happen in the Rio Grande Valley. There's no question about that. Well, Judge Henney also is no stranger. Then he's aware, which is why we need to defer to his jurisprudence and his wisdom here. He's lived in that area his whole life and understands how things are happening. He could have easily taken the path of least resistance and dismissed this case at the motion to dismiss phase. He opted not to. And that's key here. Again, I believe we're here prematurely. Mr. Helfand is an amazing attorney. I've had many cases with him. I have nothing but respect for Mr. Helfand. But I think what we're doing here today, I heard great arguments that really pertain to a summary judgment motion. We are really here prematurely. There's been no discovery. And it is correct. We were asked to replead. We did replead, filed a second amended complaint. And it was, after it was filed, it was satisfactory to the judge. The judge said, this is sufficiently plain, at which point now we find ourselves here almost two years later. Can you help us, though? What is it that these defendants did specifically? Did they take a legislative act in the session that said we're going to demote people or fire them or end positions? Or is your allegation that they put pressure on the heads of the various departments and called them up and said, you need to get rid of this and do my business? I mean, it's not clear the methodology that you believe was used. Your Honor, and so this is what we would call compadre politics in the Valley. And what that basically means is there's phone calls being made. There's influence being exerted. They certainly would not be foolish enough to convene an open session and affirmatively state, we have a new policy in place. We will be firing anyone that opposes us in an election. All those in favor? That doesn't happen. So by no means could this ever be construed to be legislative. This is each individual board member who had seen photos of these individuals out there sees them at the polls with a competing sign. Do we know, are these photos, they're not attached to pleadings, are they? Because that's an issue too, whether they know that Yes, photos do exist. Photos exist. Were they attached or part of the? No. I don't believe that we have, Your Honor. And my friend, we never really got to the discovery phase to begin with. So we haven't had the good pleasure of being able to submit all these photos to the other side. Well, you know, my problem here is that in police cases, typically we say you've got to at least allege the elements. Knowledge, they knew. We don't wait for it. We don't put the police officers through discovery. I mean, why is this case different? There is actually evidence here, Judge. There is a string of emails. But you keep talking about discovery. Now, I need to hear what's actually alleged that gets you over the hurdle. Well, so we have alleged that photos exist, that social media posts exist, that created awareness for these individual actors, individual board members. We have, again, these emails that connect the dots between the adverse employment action and the threat to do so. And so without the awareness and knowledge, there is no threat. There is no necessary adverse employment action. But these have been pledged. The existence of these items, the existence of these social media posts, the existence of a board member communicating directly with another individual telling them we're going to get these guys, the emails letting them know that the superintendent has been put on notice, that this is how we do things here in Rio Grande. That's been alleged. Now, have the totality of all these actual documents been exchanged yet? No. But for our purposes, we just need to allege that they exist and put the other side on notice, which we have done. And Judge Hinojosa was completely satisfied with. Now— If you don't think that you've alleged, what do you want us to do? If we think you're missing, if you have a gap, if we think so. If this court were to find there was a gap, the appropriate remedy would be to send it back to the district court to then address how that would be remedied to the extent there are any gaps. But for this court to outright dismiss this case on that notion, I believe would be beyond the scope. If anything, this should go back to Judge Hinojosa to decide if a further amended pleading would need to be submitted. And remember, he was satisfied with the second amended pleading— I'm sorry, the first amended pleading. So he was satisfied with the amendment. And if this court thinks there needs to be some more fleshing out of some of these pertinent issues, the appropriate remedy at the motion to dismiss phase would be to go back and send it back to the trial court. Here, again, we're addressing or counsel's addressing issues that would make more sense at the summary judgment phase. Now let me also add that these are municipal actors going on the issue of presumed immunity. These are municipal actors, not state actors. So we would allege that immunity doesn't even exist to begin with. The sheriff of Harris County gets sued all the time. The Fort Bend sheriff gets sued all the time. There are no immunity issues here. I heard counsel refer to a case involving Fort Bend where there were no immunity issues. That went to trial. Similarly here, there would be no immunity issues. There is no legislative component. This is effectually these individuals asserting their influence to impact the livelihoods of individuals that opposed them during an election. So they didn't act as a board. They acted as individual board members associating, asserting their influence. Correct. So you've got, but intertwined into that is the notion that they have now, as a result of the 2018 election, a new majority. Can you help with that? I know that they have a quorum, because if they have three, and three can be a quorum and three could vote, so theoretically they could be a majority. If the other people didn't show up, then they could take it out in a quorum. But what does the president have to do with, you mentioned the board president as the necessary fourth in the complaint, or in the briefing, and I'm not clear, because I think you're trying to get to four, so that you can say that it's a definitive majority, but that's not clear. So he is the fourth. So as a result of the 2018 school board election, Eddie Ramirez, Basilio Villarreal, Noah Castillo, and Letty Lopez came in. So now they've got four out of seven. They won. They're the new majority, and now they are able to individually exert their influence, but at the same time it would require board approval to effectuate certain personnel actions, and they now are armed with the ammunition to know that that can't be undone. They can go and put pressure on a principal, put pressure on the superintendent, and that that will not be undone once it gets to the board level to actually effectuate the adverse employment action because they have the majority. So they are intertwined to some extent, but at no time does this ever rise to the level of being legislative in nature. Now, when we're looking at that very issue, again, we would reassert that these are state actors and not, in fact, subject to immunity. But we look at Heffernan versus City of Patterson, which is a Supreme Court case, found that political activity included an employee support for a particular candidate. Now, again, we have sufficiently into the satisfaction of Judge Hinojosa alleged that this political activity is a reasonable basis for this lawsuit to continue forward beyond the motion-to-dismiss phase. But simply enough, the political activity is, in and of itself, worthy to allow this case to continue pursuant to the Supreme Court's finding in Heffernan. Now— I'm sorry. Is the fourth person, the president, that was not sued, that person just wasn't sued, right? Because the fourth person that's sued is the past interim board member Raul Gonzalez. Is that—am I wrong? That's correct, Judge. So the individuals that were ultimately sued in this cause of action were the individuals that, upon our investigation and before we even filed this lawsuit, were known to have been the ones engaged. But you don't know that the fourth person was involved? I cannot—we do not have as much information there. Does that hurt the idea that they have a majority, then, if you only have three? It does not, Judge, because we have a— one way or the other, they have a majority to effectuate whatever the other three that we know, in fact, were out there throwing their weight around and asserting their influence were doing. So they—as Judge Higginbotham noted, this is just how it can go down there. And every time there's a new group coming in, this is going to happen again. Right. I mean, you can have an idea that there's a narrative of something that might be something you could plausibly imagine based upon past experience or whatever reason, but you still have to allege what you need to allege, don't you? And the specific— I agree with you. And so it just does seem to be that it's arguably there's a gap between what these people specifically did. Right. And again, we haven't gotten to the— It's a little vague about that. Right. And look, I think one thing that's lost here is the entire notion of circumstantial evidence. When we're looking at employment cases, circumstantial evidence is something that is looked at, that is key and important. We may not have every— We're looking for this sort of claim, though, and that's kind of what this feels like. Well, there's smoke, there's got to be fire, and so it just speaks for itself, and we're just going to assume that you can fill in the gaps because that's what everybody knows. There's something— It seems to be a little bit of a problem. Can you help? Sure. I would agree if we didn't have these statements that actually backed up that this is not just some notion of how things happen, but that it actually happened in this particular instance. Do you think we have jurisdiction? Here? Start with the premise that you're here on an interlocutory basis with a denial of qualified immunity. The district court hasn't denied qualified immunity. All the district court has done, once it's a sort of amended complaint, and now he's simply said that I can't determine yet, and is that a problem for summary judgment? It's still in litigation. It's still in litigation. That issue has not been addressed. Judge Inahosa clearly stated that this would be something that should be and could be heard potentially at the summary judgment phase, but he has not—you're right, Judge Higginbotham— he has not at all addressed the issue of immunity because it was premature to do so, and if this— Well, I go back to the character of qualified immunity itself, which is that it's the earliest determinable point. Now, the district judge didn't simply— when he said it, he didn't think it was determinable on the face of the amended complaint, and he's granted a— but what he did was then to—he dismissed— he wouldn't accept that pleading, but he said foul emotion for summary judgment, and then he would—so he was moving toward the— trying to get to the point of doing so. I understand the pleading requirements of Iqbal and that they're there, but I go back to the substance of what qualified immunity is and the basis of our jurisdiction. It's when it's determined. Defendants are entitled to that at the earliest time that it's determined. Sometimes it is determinable on the face of it or not, but this requires a lot of very detailed factual examination as to each of these defendants' roles, et cetera. I agree, Judge, and that's why I think we're here prematurely. If this court were to find and give deference to Judge Hinojosa that we have not, in fact, gotten to the point where he can himself determine whether or not there's an immunity issue or not, which he's already indicated he does not believe would be possible until we get to the summary judgment phase, then this court would not have jurisdiction to issue any order that would outright dismiss this case, as Mr. Helfand is here today to ask this court to do. Thank you, Counsel. Could you please add three minutes to the time? Thank you, ma'am. Excuse me. Mr. Helfand, you better address this jurisdiction thing first before even that legislative immunity. I'm sorry? This jurisdiction thing, I think it would be very prudent to address. We haven't heard from Mr. Hodges. Oh. Well, I'm sorry. I just saw Mr. Helfand standing there. Aren't we supposed to hear from Mr. Hodges? I was just saying because we went over on Mr. Hinojosa, we need to add. But we need to hear from Mr. Hodges first. Isn't that correct? Oh, I beg your pardon. I misunderstood. My fault. I was just trying to make sure for housekeeping purposes. Yes, I'm here to please the court. Eddie Hodges here. Just to kind of reiterate a point from our co-counsel, one, we believe that this motion should be set for a summary judgment, just like the district court stated. And also just to go off the points in which the appellate's counsel has stated, he mentioned a case in which negative comments was denied as for qualified immunity. Here we have alleged demotions and terminations, which is very distinctive from the negative comments that he has made in that case. Excuse me. And then also based on the suspicious timing of the adverse actions, we believe that, you know, given after the election and that these informal board members came together informally, that they came together and said that we're going to demote these individuals based on their political association. And so, one, we believe that that is enough to give them fair notice of a sufficient complaint. And then as well is that we don't believe that absolute immunity does not exist because what they have done is not a legislative function. Like in the case of the case of. In the case of bygone, the court stated that the bank, the company, or the school board issued a policy in regards to the banking function in which eliminated a position specifically based on that policy. Here, there's no policy in play. The termination or the demotions were based on informal process and it wasn't going through the board process. And so at this point, we don't understand what the board process is. So there's no board. This isn't a legislative case at all. Is your position. Yes. We don't believe that this is legislative nature at all. There's no specific policy that they came out after the election stated that the reason why these individuals being demoted is because of our policy and that we're eliminating positions because of that. They weren't acting as legislators. They were acting as. I elected officials. Yes. Yes, Your Honor. That's your position. Yes. You have some sort of independent gravitas separate from their legislative function. Yes, Your Honor. We believe that with the board president and also the superintendent's recommendation that together they've created this informal board majority, which is cause our police to be demoted and terminated. On the jurisdiction point. Did you brief? Did you, Mr. Canard, brief that to this court that we lack jurisdiction because it's there's fact issues that preclude us, you know, under Kenny V. Weaver et al or some other authority for that. We didn't necessarily brief that specific issue. You know, I think that get coming into that. We thought that if the court would not have jurisdiction, that that would be something that would be brought up. But I think that based on that information, that the jurisdictional issue is an important issue to look at. And I think going to the district court's decision and looking at his decision as to whether qualified immunity has been decided at the earliest point. You know, I think we have to go through discovery and get depositions and information to determine whether they are qualified or immune in this case. And so also going into the elements of what they stated, the protected activity, I think my co-counsel has already specified on the Hefferman case, which showed that supporting individual in a candidacy is considered political activity. And then the causal connection is there based on suspicious timing of the demotion and adverse action. And so we believe that there is protected activity. There is a causal connection and that the board was aware based on the facts or pledged that the board was aware based on inferences that they knew on photos and social media that these individuals were supporting these candidates. So, you know, we believe that the qualified immunity and absolute immunity defenses are not valid here in this instance. And we believe that the burden should be on the defendant to excuse me, the burden should be on the appellant to show that the wrongful conduct was within a legislative nature. And there is no evidence or no factual pleading to show that. So we respectfully ask the court to adhere to the district court's decision that this case should be decided on a summary judgment motion. And we respectfully ask that you affirm that decision as well. Thank you. I don't know, Judge Elrod, if you'd like me to take them in order in which you pose the questions or the seriousness of the implication of the question. I think you should take the jurisdiction question first. The cases in which the Supreme Court has endorsed the determination that a factual question must be resolved in order to resolve the question of immunity are cases of summary judgment. There is no motion to dismiss case that holds for that proposition for this very reason. This court addressed that very point on a motion to dismiss in Bakke versus LeBlanc. What the court said was, and by the way, Lyon-Boudreaux is a predecessor as well, and Wicks versus Mississippi. And what this court has repeatedly said now for over 40 years is at the motion to dismiss phase, if the court believes there are factual questions, it is required to identify those factual questions and permit limited discovery to address those factual questions the court needs resolved to address them. Would you command for exactly that if we thought that it's not enough there there? I wouldn't be a good advocate for my clients if I didn't implied you not to do that, Judge. These people have been sued now for over two years. Unlike an elected sheriff or a constable or a county judge, these people, a county judge in Texas being an executive, not a judicial officer, these are private citizens who volunteer a small amount of time, hopefully, to running a school board. And immunity is meaningful in this context. So I would submit that the court should not do that. But what we can be sure of, to answer your first question, is there is no lack of jurisdiction here. Now, to your question of legislative immunity, this goes at the heart of a 1983 action against an individual. We almost never have 1983 actions where the question is did the individual act under color of law, although that is a requisite element of every 1983 case against an individual. The answer to your Honor's question is there could only be a case of legislative immunity against these elected legislators because they have no executive authority. And executive authority is where qualified immunity applies. So if they were the superintendent, they could be sued for displaying their gravitas. But if they're the school board members, they are not acting under the color of their authority. Exactly, Judge. Exactly. Because the superintendent is the executive of the school board. He or she is the CEO, the president, whatever we want to call them. They conduct the day-to-day executive activities of the office. And, in fact, they are the only people authorized to fire, subject to board review, a school district employee in Texas. Are there tort claims against them for interfering with their contracts? If they're private actors, then you could sue them for that. Is that part of this lawsuit? I didn't pay attention to that. There are no state law claims of that nature, Judge. But since Education Code 11.05, which is cited at page 13 of the brief, Texas Education Code 11.05, makes it clear that the board may only act as a body. Not one of these appellants could have acted under color of state law in whatever supposedly imaginatively they did because they had no legal authority. So if they did do something individually, for example, went to the superintendent and said, I sure would like you to fire so-and-so, they would not be acting under color of state law. Any more than a private individual who asked the superintendent to fire somebody would be acting under color of state law by making that request. Had they voted or had they, in a public session, told the superintendent that he should do that, well, then they would have been acting under color of law. But they would have been acting in a legislative capacity. It would be as if, it would certainly never happen to a member of this panel, but if a judge were sued for firing someone, the answer is they have judicial immunity as to the composition of their staff just as much as they do any other action because judges only take judicial actions. Legislators only take legislative actions. And those are absolutely immune. We only get to the question of qualified immunity if there is executive action, and these are not executives. Now, Mr. Kennard is 100% correct to say we've not done any discovery. But that was Mr. Iqbal's complaint to the United States Supreme Court. I need discovery to state a claim. And the Supreme Court said, no, first you have to state a claim against the attorney general, then you can have discovery. And so that is the law. There's no shortage of opinions on whether that should be the law. But that is the law. And notably in this particular case, the suggestion of circumstantial evidence doesn't even arise yet because just like a proper pleading under Iqbal or Twombly, circumstantial evidence depends on facts, and we are still devoid of any facts. What we have here is political support alleged by each of these individuals and a firing decision and no causal relationship or connection between those two as to any of the elements of a claim. Notably, we would have to have those facts to look at the legal question. Most of the difficulty of this case stems from the fact that it's not here on a motion for summary judgment, which is where most of our qualified immunity cases are decided, a summary judgment. And the awkwardness of this, you've got to – what you basically say is that – you ask – he dismissed without prejudice to refile, which if it was inadequate under Iqbal, he certainly had jurisdiction. He should do that and give an opportunity to replead, if you will. And what he has simply done is to insist on the – to me by the summary judgment that you – putting the burden on them to develop the – to state the facts themselves. And then from the – then we ask the question of whether we gain jurisdiction. If there's any questions of a material fact, that would affect that. I said I understand that you're going to threaten the natal in some senses, but as a practical matter, that's the awkwardness of this case. All these questions are not of the record in any meaningful sense. I can understand the logic, Your Honor, but unfortunately it just collides with the law. That was exactly what happened in Iqbal. That's exactly what this court rejected in Bakke v. LeBlanc. The district judge said go do discovery and file a motion for summary judgment for the city manager if he wasn't involved. If it's a failure under Iqbal, then you just – they should have an opportunity to replead. Right. Well, and here, again, hypothetically it makes a lot of sense, but practically in this case Judge Hinojosa told these appellees they failed to state a claim and to replead, and they did essentially nothing to replead. So the case now comes to this court for a decision because the district judge reversed his opinion without telling us how or why he did so. I appreciate the court's time. Thank you very much. Thank you, Counsel.